IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-00770-PAB

NELLIE A. VALLES,

        Plaintiff,

v.

KILOLO KIJAKAZI,[1] Acting Commissioner of Social Security,

        Defendant.

_____

**ORDER**
_____

        This matter comes before the Court on the Complaint [Docket No. 1] filed by plaintiff Nellie Valles on March 20, 2020.  Plaintiff seeks review of the final decision of the defendant (the "Commissioner") denying her claim for insurance benefits under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383c.  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).[2]

## I.  BACKGROUND

        On April 13, 2017, plaintiff applied for social security benefits under Title XVI of the Act.  R. at 163.[3]  Plaintiff alleged a disability onset date of January 10, 2011.  *Id.*

_____

    [1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court will substitute Kilolo Kijakazi as defendant for Andrew Saul, former Commissioner of Social Security.

    [2] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

    [3] The Court uses the page numbers corresponding to the labeling of the record, which are found in the lower right corner of each page.

After her claims were initially denied on August 16, 2017, plaintiff requested a hearing before an administrative law judge ("ALJ").  R. at 100, 106.  A hearing was held on February 6, 2019.  *See* R. at 34.  On March 15, 2019, the ALJ issued a decision denying plaintiff's claim.  R. at 12.

The ALJ found that plaintiff had not been disabled within the meaning of the Act since April 13, 2017.  R. at 16.  The ALJ found that plaintiff had not engaged in substantial gainful activity ("SGA") since April 13, 2017 and has the following severe impairments: (1) degenerative disc disease of the cervical spine; (2) degenerative disc disease of the lumbar spine; and (3) obesity.  R. at 17.  The ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. at 21.  Ultimately, the ALJ concluded that plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 416.967(a) with the exceptions that plaintiff "can occasionally bend (stoop), squat (crouch), and kneel.  She cannot be exposed to temperature extremes.  She cannot be exposed to hazardous work areas.  She can perform occasional above chest level work.  She can occasionally operate foot or leg controls."  R. at 21.  The ALJ determined that plaintiff was unable to perform any past relevant work, R. at 27, but found that jobs existed in significant numbers in the national economy that plaintiff could perform.  R. at 28.

On January 22, 2020, the Appeals Council denied plaintiff's request for review of the ALJ's decision.  R. at 1.  Accordingly, the ALJ's decision is the final decision of the Commissioner.

2

## II.  STANDARD OF REVIEW

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision.  *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  "Substantial evidence is more than a mere scintilla, and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (citation and quotation omitted).  "The threshold for such evidentiary sufficiency is not high."  *Id.*  However, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III.  THE FIVE-STEP EVALUATION PROCESS

To qualify for disability benefits, a claimant must have a medically determinable

physical or mental impairment expected to result in death or last for a continuous period
of twelve months that prevents the claimant from performing any substantial gainful
work that exists in the national economy.  42 U.S.C. § 423(d)(1)-(2).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his
> physical or mental impairment or impairments are of such severity that he
> is not only unable to do his previous work but cannot, considering his age,
> education, and work experience, engage in any other kind of substantial
> gainful work which exists in the national economy, regardless of whether
> such work exists in the immediate area in which he lives, or whether a
> specific job vacancy exists for him, or whether he would be hired if he
> applied for work.

42 U.S.C. § 423(d)(2)(A).  The Commissioner has established a five-step sequential
evaluation process to determine whether a claimant is disabled.  20 C.F.R. § 416.920;
*Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the evaluation
are:

> (1) whether the claimant is currently working; (2) whether the claimant has
> a severe impairment; (3) whether the claimant's impairment meets an
> impairment listed in appendix 1 of the relevant regulation; (4) whether the
> impairment precludes the claimant from doing his past relevant work; and
> (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R.
§ 404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in
the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of
Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However,
"[i]f the claimant is not considered disabled at step three, but has satisfied her burden of
establishing a prima facie case of disability under steps one, two, and four, the burden
shifts to the Commissioner to show the claimant has the residual functional capacity

(RFC) to perform other work in the national economy in view of her age, education, and work experience."  *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts."  *Hill v. Sullivan*, 924 F.2d 972, 974 (10th Cir. 1991).

## IV.  DISCUSSION

Plaintiff alleges the following errors in the ALJ's decision: (1) the ALJ did not properly weigh the conflicting opinions of the various medical sources; (2) the ALJ's assessment of plaintiff's testimony is not supported by the evidence; and (3) the ALJ did not properly assess the severity and limiting effects of plaintiff's carpal tunnel syndrome ("CTS") and headache condition.  Docket No. 16 at 4.  The Court will consider these arguments within the five-step system used by the Commissioner.

### A.  Step One

The parties do not dispute the ALJ's determination that plaintiff has not been engaged in SGA since April 13, 2017.  *See generally* Docket Nos. 16, 18.

### B.  Step Two

At step two, the ALJ must determine whether plaintiff has a medically determinable impairment or combination of impairments that is "severe."  20 C.F.R. § 416.920(c).  A plaintiff seeking disability benefits must show that her inability to perform SGA results from "anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic

techniques.  Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source."  *Id.* § 416.921.  An impairment is "severe" if it "significantly limits" a claimant's "physical or mental ability to do basic work activities," *id.* § 416.920(c), such as walking, standing, sitting, seeing, hearing, speaking, carrying out simple instructions, using judgment, responding appropriately to supervision or coping with changes in routine.  *Id.* § 416.922(b).

Plaintiff argues that the ALJ did not properly assess the severity and limiting effects of her CTS and headache condition.  Docket No. 16 at 19-24.  The ALJ found that plaintiff's CTS was not severe because the record did not establish that it caused more than a minimal limitation on plaintiff's ability to perform basic work activities.  R. at 18.  The ALJ made the same determination with respect to plaintiff's headaches.  R. at 17-18.

Even if the ALJ erred at step two when he determined that plaintiff did not have a severe impairment of CTS or headaches, this error would have had little independent impact on the ultimate disability determination.  At step four, an ALJ is to consider all of a claimant's impairments and limitations, even those that are not severe.  *See* 20 C.F.R. § 416.945(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 416.920(c), 416.921, and 416.923, when we assess your residual functional capacity.").  "[A]ny error [at step two] became harmless when the ALJ reached the proper conclusion that [plaintiff] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."

*Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008); *see also Groberg v. Astrue*, 415 F. App'x 65, 67 (10th Cir. 2011) (unpublished) ("An error at step two concerning the severity of a particular impairment is usually harmless when the ALJ, as here, finds another impairment is severe and proceeds to the remaining steps of the evaluation."). Therefore, whether the ALJ improperly found plaintiff's CTS and headaches to be non-severe is appropriately addressed at step four, not at step two. *See Dixon v. Astrue*, No. 08-cv-01879-PAB, 2010 WL 4853393, at *4 (D. Colo. Nov. 19, 2010).

## C.  Step Three

Plaintiff makes no argument that any of her impairments meet or are equivalent to specific impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1, Part A., such that the ALJ should have found plaintiff disabled at step three. *See generally* Docket No. 16.  Accordingly, Court will move on to step four.

## D.  Step Four

The ALJ found that plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 416.967(a) with the exceptions that "[plaintiff] can occasionally bend (stoop), squat (crouch), and kneel.  She cannot be exposed to temperature extremes.  She cannot be exposed to hazardous work areas.  She can perform occasional above chest level work.  She can occasionally operate foot or leg controls."  R. at 21. Sedentary work

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a).  In making this RFC, the ALJ considered "all symptoms and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence, based on the requirements of 20 CFR 416.929 and SSR 16-3p.  The [ALJ] also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 416.920c."  R. at 21.

Plaintiff argues that the ALJ erred at step four by (1) not properly weighing the conflicting opinions of various medical sources, and (2) assessing plaintiff's testimony in a way that is not supported by the evidence.  *See* Docket No. 16 at 4.  As discussed above, the ALJ's RFC determination is also the proper place to determine whether the ALJ properly found plaintiff's CTS and headaches to be non-severe.

### 1.  Conflicting Opinions of Various Medical Sources

Title 20 C.F.R. § 416.920c governs how an ALJ considers medical opinions for claims filed on or after March 27, 2017.  An ALJ will consider the persuasiveness of each medical source's opinion using the following factors:

(1) Supportability.  The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
(2) Consistency.  The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.
(3) Relationship with the claimant.  This factor combines consideration of the issues in paragraphs (c)(3)(i)-(v) of this section.
     (i) Length of the treatment relationship. . . .
     (ii) Frequency of examinations. . . .
     (iii) Purpose of the treatment relationship. . . .
     (iv) Extent of the treatment relationship. . . .
     (v) Examining relationship. . . .
(4) Specialization.  The medical opinion or prior administrative medical

finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.
(5) Other factors.  We will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding.  This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements.  When we consider a medical source's familiarity with the other evidence in a claim, we will also consider whether new evidence we receive after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive.

20 C.F.R. § 416.920c(c).  The regulations state that "[t]he most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability . . . and consistency."  *Id.* § 416.920c(a).  An ALJ is not required to explain his consideration of the factors in paragraphs (c)(3) through (c)(5) unless the ALJ finds that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not identical.  *Id.* § 416.920c(b)(2)-(3).

The ALJ's RFC considered three medical opinions, which the ALJ stated were the October 2017 opinion of Ms. Merilee Briggs-Mead, a nurse practitioner, the November 2018 opinion of Ms. Briggs-Mead, and the August 2017 opinion of Dr. Robert Pratt.  *See* R. at 26-27.  However, the November 2018 medical opinion the ALJ attributed to Ms. Briggs-Mead was actually authored by Ms. Lauren Hanley, also a nurse practitioner.  *See* R. at 624-26, 653.

Ms. Briggs-Mead concluded that plaintiff: (1) could lift up to 15 pounds for up to

9

one-third of an eight hour work day; (2) could sit for 6-8 hours at one time; (3) could be on her feet for 15 minutes at a time and 2-3 hours out of an eight hour work day; (4) could rarely stoop, squat, crawl, and kneel; (5) could seldom reach, handle, or finger in both upper extremities; (6) needed to lie down for 15-30 minutes 2-3 times per day; and (7) suffered from 3-4 headaches per week that lasted 2-3 hours, for which she was prescribed medication.  R. at 364-67.

Ms. Hanley concluded that plaintiff: (1) could lift up to 10 pounds for up to one-third of an eight hour work day; (2) could sit for one hour at one time for a total of four hours out of an eight hour work day; (3) could be on her feet for 15 minutes at a time and 2-3 hours out of an eight hour work day; (4) could never stoop and could rarely squat, crawl, and kneel; (5) could seldom reach, handle, or finger in both upper extremities; (6) needed to lie down for 30 minutes every hour; and (7) suffered from 3-4 headaches per week that lasted 2-3 hours, for which she was prescribed medication. R. at 624-26, 653.

Dr. Pratt, the state agency medical consultant, concluded that plaintiff: (1) could lift up to 20 pounds for up to one-third of an eight hour work day; (2) could sit for about six hours out of an eight hour work day; (3) could push and/or pull with no limits besides those for lifting and carrying; (4) could occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl; (5) could never climb ladders/ropes/scaffolding; and (6) should avoid concentrated exposure to extreme cold, extreme heat, noise, vibration, and should avoid all exposure to hazards, including machinery and heights.  R. at 91-94.

The ALJ incorrectly attributed Ms. Hanley's opinion to Ms. Briggs-Mead.  *See* R. at 26, 364-67, 624-26, 653.  While this was an error by the ALJ, the ALJ did consider

both Ms. Hanley's and Ms. Briggs-Mead's opinions separately; he simply thought that they had both been written by Ms. Briggs-Mead.  The ALJ found the opinions unpersuasive because (1) the opinions primarily involved checking off boxes and writing limitations without explaining the rationale for the limitations; (2) the opinions cited objective tests claimant has had without explaining why the test supported the limitations; (3) some of the cited tests showed normal findings, which is inconsistent with the opinions; (4) the statements are not consistent with the record as a whole; and (5) the statements are inconsistent with plaintiff's ability to perform activities of daily living.  R. at 26-27.

The ALJ found Dr. Pratt's opinion persuasive because Dr. Pratt supported his opinion with explanation and his opinion was generally consistent with the record as a whole.  R. at 27.  However, the ALJ determined that the record as a whole supported that plaintiff was more limited than Dr. Pratt opined and that plaintiff can only perform a range of sedentary work.  *Id.*

### a.  Ms. Hanley's Opinion

Plaintiff argues that the ALJ did not properly weigh Ms. Hanley's opinion because he attributed it to Ms. Briggs-Mead and this error in turn caused the ALJ to misjudge what constituted the "record as a whole."  Docket No. 16 at 12-13.  However, many of the reasons that the ALJ gave for discounting both the October 2017 and November 2018 opinions apply to just Ms. Hanley's November 2018 opinion.  The ALJ compared the October 2017 and November 2018 opinions to treatment notes from May 2018, September 2018, and plaintiff's activities of daily life, and found them to be inconsistent. *See* R. at 26-27.  Ms. Hanley's opinion primarily consisted of checking off boxes and

writing limitations without explanation.  *See* R. at 624-26, 653.  The ALJ noted that some of the tests cited in the November 2018 opinion showed normal findings in plaintiff's right elbow and finger, which were not consistent with the opinion statement. R. at 26.

The Court finds that the ALJ's failure to recognize that the October 2017 and November 2018 opinions came from different people does not mean that the ALJ's finding that the November 2018 opinion was unpersuasive is not supported by substantial evidence.  For the reasons noted above, the ALJ found the opinions less supported than Dr. Pratt's opinion.  *See* R. at 26-27.  While realizing that the opinions came from two different sources may have increased their apparent consistency in the eyes of the ALJ, it would not change the fact that the ALJ found them inconsistent with the treatment notes and plaintiff's daily activities.  *See id.*  Therefore, the Court finds that substantial evidence supports the ALJ's determination that the November 2018 medical opinion (Ms. Hanley's opinion improperly attributed to Ms. Briggs-Mead) is unpersuasive.

### b.  Ms. Briggs-Mead's Opinion

In discussing Ms. Briggs-Mead's opinion, the Court refers to her October 2017 opinion, not the combination of the October 2017 and November 2018 opinions as discussed by the ALJ.  Plaintiff argues that each of the reasons given by the ALJ to find Ms. Briggs-Mead's opinion unpersuasive is flawed.  Docket No. 16 at 12.  Specifically, plaintiff claims that (1) Dr. Pratt's opinion is not better rationalized than Ms. Briggs-Mead, and in any event, the ALJ did not follow Dr. Pratt's limitations; (2) the normal

tests were cited in Ms. Hanley's report, not Ms. Briggs-Mead's; (3) the ALJ improperly discounted portions of Ms. Briggs-Mead's opinion while crediting other portions; (4) plaintiff's activities of daily living are not inconsistent with disability; and (5) Dr. Pratt's opinion is not a proper comparison point.  *Id.* at 14-17.

### i.  Rationale for Ms. Briggs-Mead's Limitations

The ALJ found Dr. Pratt's opinions persuasive, in part, because he supported his opinions with explanation.  R. at 27.  For instance, noting that plaintiff's "exertional limitations are due in part to her degenerative disc disease and obesity, she has environmental limitations due to her use of sedating medications, and she has to limit her exposure to extreme temperatures due to the claimant's reports of worsening leg cramping."  *Id.*  In contrast, the ALJ found that Ms. Briggs-Mead's opinion did not explain her rationale for the limitations.  R. at 26.

Plaintiff argues that the law does not require a medical opinion to explain the rationale, Dr. Pratt's opinion has no more explanation than Ms. Briggs-Mead's, and Dr. Pratt's rationale cannot be better that Ms. Briggs-Mead's because the ALJ concluded that plaintiff's was more restricted than what Dr. Pratt found.  Docket No. 16 at 5-7.

"'Supportability' examines how closely connected a medical opinion is to the evidence and the medical source's explanations."  *Zhu v. Comm'r, SSA*, 2021 U.S. App. LEXIS 19959, at *14 (10th Cir. 2021) (unpublished).  In light of this, the Court finds substantial evidence to support the ALJ finding Dr. Pratt's opinion more persuasive when Dr. Pratt provided more explanation for his limitations than Ms. Briggs-Mead or Ms. Hanley.  Additionally, the Court rejects plaintiff's argument that Dr. Pratt did not

provide more explanation than Ms. Briggs-Mead or Ms. Hanley for his limitations opinion.  While it is not overly detailed, it is more detailed than Ms. Briggs-Mead's or Ms. Hanley's opinions, and thus supports the ALJ's decision to find Dr. Pratt's opinion more persuasive.  *Compare* R. at 91-94, *with* R. at 364-67, 624-26, 653.

Plaintiff also argues that, because the ALJ found that the record supported more restrictions on plaintiff's RFC than those imposed by Dr. Pratt, Dr. Pratt's opinion cannot have been correct.  Docket No. 16 at 6-7.  However, "if a medical opinion adverse to the claimant has properly been given substantial weight, the ALJ does not commit reversible error by electing to temper its extremes for the claimant's benefit."[4]  *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).  Therefore, the Court rejects plaintiff's argument.

### ii.  Normal Tests Cited in Ms. Hanley's Opinion

Plaintiff argues that, because the normal tests were cited in Ms. Hanley's opinion, not Ms. Briggs-Mead's opinion, the ALJ could not use them to discount Ms. Briggs-Mead's opinion.  Docket No. 16 at 15.  Ms. Briggs-Mead's report states that the "clinical findings, observations, testing, etc." which support her conclusions are "Multiple x-rays, MRIs, Specialists."  R. at 367.  While it is true that Ms. Hanley's opinion is the one that specifically cites the normal tests, plaintiff's attempt to rely on the ambiguity of Ms. Briggs-Mead's opinion is unpersuasive.  It simply reinforces the ALJ's conclusion that Ms. Briggs-Mead's opinion is unsupported.

---

[4] Though *Chapo* evaluates the ALJ's consideration of medical opinions under the prior regulations, the Court finds the reasoning applicable to this case.

### iii.  Crediting Some but not all of Ms. Briggs-Mead's Opinion

Plaintiff argues that, because the ALJ imposed restrictions in the RFC that are similar to those in Ms. Briggs-Mead's opinion, the ALJ credited portions of her opinion, while discounting other portions of her opinion, and did not provide a reason for doing so.  Docket No. 16 at 15-16.  The ALJ's RFC determination has certain portions that are more restrictive than Ms. Briggs-Mead's (e.g., the lifting limit) and certain portions that are less restrictive (e.g., the bending, squatting, and kneeling limits).  *Compare* R. at 21, *with* R. at 364-65.  While "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability," *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007), there is no evidence that this is what the ALJ did.  Instead, the ALJ stated that he found Ms. Briggs-Mead's opinion unpersuasive and Dr. Pratt's opinion persuasive.  As noted above, tempering Dr. Pratt's opinion in plaintiff's favor is not reversible error.  *See Chapo*, 682 F.3d at 1288.

### iv.  Restrictions Inconsistent With Daily Activities

The ALJ found Ms. Briggs-Mead's opinion unpersuasive, in part, because its postural limitations were inconsistent with plaintiff's activities of preparing meals, doing laundry, and shopping.  *See* R. at 27.  Plaintiff argues that there is no evidence that these activities required more than rare postural activity.  Docket No. 16 at 16.  "While 'sporadic performance' of activities, like performing a few household tasks, 'does not establish that a person is capable of engaging in substantial gainful activity,' the Tenth Circuit has consistently held that an ALJ may reasonably consider such activities when

they are inconsistent with a claimant's reported limitations." *Wagner v. Berryhill*, 2017 WL 3981147, at *9 (W.D. Okla. Sept. 11, 2017) (quoting *Frey v. Bowen*, 816 F.2d 508, 516-17 (10th Cir. 1987)) (internal citation omitted). Even if the Court were to assume that there was not evidence of more than rare postural activity, "the fact that the evidence could support another conclusion does not necessarily mean that the ALJ erred in h[is] analysis." *Miles v. Saul*, No. 20-cv-01456-WJM, 2021 WL 3076846, at *4 (D. Colo. July 21, 2021) (citing *Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016)). This was but one reason of many that the ALJ used to find that Ms. Briggs-Mead's opinion was unpersuasive.

### v.  Inconsistency With Dr. Pratt

The ALJ also noted that Ms. Briggs-Mead's opinion is inconsistent with Dr. Pratt's, R. at 27, which plaintiff argues is an improper comparison point. Docket No. 16 at 17. Consistency "is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Miles*, 2021 WL 3076846, at *3 (quoting *Vellone v. Saul*, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021)). Comparing an opinion to another opinion in the record is a proper exercise in determining consistency.

### c. Conclusion

The Court is to consider whether the ALJ's determination is supported by substantial evidence, based on the record as a whole. *See Angel*, 329 F.3d at 1209. Plaintiff makes many arguments attempting to rebut the reasons that the ALJ gave for finding Dr. Pratt's opinions persuasive and Ms. Briggs-Mead's and Ms. Hanley's

opinions unpersuasive.  The Court has rejected each of these arguments individually.

Additionally, the Court notes that, taken as a whole, the ALJ has more than adequately

explained why his determinations of persuasiveness are based on substantial evidence.

### 2.  ALJ's Assessment of Plaintiff's Testimony

The ALJ found that the assigned RFC was supported by the medical evidence

"and by the lack of objective findings to support the claimant's allegations of

impairment."  R. at 27.  Plaintiff argues that the ALJ's conclusion regarding her RFC is

wrong because there is objective evidence to support her allegations of impairment.

Docket No. 16 at 17-18.  As evidence, plaintiff points to various statements by plaintiff

detailing how she is impaired as well as tests showing various medical conditions.  *See*

*id.* at 18.

The ALJ found that plaintiff's medically determinable impairments could

reasonably be expected to cause the alleged symptoms, but that plaintiff's "statements

concerning the intensity, persistency and limiting effects of these symptoms are not

entirely consistent with the medical evidence and other evidence in the record."  R. at

25.

> Once the existence of a medically determinable impairment that could
> reasonably be expected to produce pain or other symptoms is
> established, we recognize that some individuals may experience
> symptoms differently and may be limited by symptoms to a greater or
> lesser extent than other individuals with the same medical impairments,
> the same objective medical evidence, and the same non-medical
> evidence.  In considering the intensity, persistence, and limiting effects of
> an individual's symptoms, we examine the entire case record, including
> the objective medical evidence; an individual's statements about the
> intensity, persistence, and limiting effects of symptoms; statements and
> other information provided by medical sources and other persons; and
> any other relevant evidence in the individual's case record.

SSR 16-3p, 2017 WL 5180304, at *4 (Oct. 25, 2017).  The ALJ cited evidence that, while plaintiff had decreased sensation and strength from at least one appointment in 2017, later treatment notes showed "generally normal or mild objective findings."  R. at 25.  Additionally, plaintiff's condition improved with treatment and she had a steady decrease in pain symptoms since starting physical therapy.  *Id.*  This evidence supports the ALJ's finding that plaintiff's statements about her symptoms were unsupported by objective medical evidence.  Accordingly, the Court finds this determination is supported by substantial evidence.

The MRIs plaintiff points to as "objective tests [that] appear to support plaintiff's testimony of her limitations" are from 2016 and 2017.  *See* Docket No. 16 at 19 (citing R. at 22-23, which describes a December 2016 MRI of cervical spine and an August 2017 MRI of lumbar spine).  Plaintiff additionally cites a February 2018 treatment note that shows mild left and moderate right CTS.  *Id.* at 19 (citing R. at 417).  The ALJ specifically observed that plaintiff's May 2018 treatment notes showed "decreased range of motion on the musculoskeletal examination but a normal, full range of motion of all joints.  She had no focal neurological deficits.  She also had normal sensation, reflexes, coordination, muscle strength, and tone."  R. at 25.  Similar positive reports were also reflected in her September 2018 treatment notes.  *Id.*

The Court finds that ALJ's determination that plaintiff was not as limited as she claimed is supported by substantial evidence because her statements of her disability were not supported by the objective medical evidence.

### 3.  Severity of Carpal Tunnel Syndrome and Headache Condition

Plaintiff argues that the ALJ improperly found that plaintiff's CTS and headache condition were not severe.  Docket No. 16 at 19-24.  The Court found that any error in this respect at step two was harmless because the ALJ found another severe condition and proceeded to step three.

### a.  Carpal Tunnel Syndrome

The ALJ stated that, in connection with the RFC determination, he considered all of plaintiff's symptoms, R. at 21, and the long recitation of her history backs this up. *See* R. at 21-26.  Plaintiff's implicit argument is that the ALJ's RFC determination is deficient for not imposing restrictions due to her CTS.  Plaintiff cites the opinion of Dr. Gary Cohen, who found mild CTS and reminded plaintiff to limit the use of her hands and wear a splint every night.  R. at 18 (citing R. at 644).  The ALJ found this statement unpersuasive because Dr. Cohen did not explain what he meant by limiting hand use and did not support his statement with explanation.  R. at 18.  Moreover, the ALJ found the statement inconsistent with treatment notes from 2018 that showed plaintiff had normal, full range of motion in all joints.  *Id.*  Plaintiff argues that the ALJ improperly discounted this opinion.[5]  Docket No. 16 at 19-21.

---

[5] Plaintiff cites *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003), for the proposition that an ALJ must state specific, valid reasons for rejecting a physician's opinion.  *Watkins* was decided under the prior regulations that required an ALJ to "give good reasons in the notice of determination or decision for the weight assigned to a treating physician's opinion."  350 F.3d at 1300 (internal quotation and alteration omitted).  The new regulations, which apply to this case, state that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."  20 C.F.R. § 416.920c(a).  Instead, the ALJ is to determine whether a medical opinion is persuasive based on supportability, consistency, relationship with the

The ALJ's reasons for finding Dr. Cohen's opinion unpersuasive show that Dr. Cohen's opinion was not well supported and not consistent.  The ALJ noted that the opinion did not explain what he meant by the limitation on the use of her hands.  An opinion that is devoid of explanation is less persuasive.  *See Zhu*, 2021 U.S. App. LEXIS 19959, at *14 ("'Supportability' examines how closely connected a medical opinion is to the evidence and the medical source's explanations.").  Similarly, the ALJ found the opinion inconsistent with later treatment notes from multiple treatments finding that plaintiff had full strength and range of motion.  R. at 18.  Because Dr. Cohen's opinion was not well supported and was inconsistent, the ALJ's decision to find it unpersuasive was based on substantial evidence.

Plaintiff also argues that the ALJ's failure to cite a report from February 2018 showing moderate right CTS was in error.  Docket No. 16 at 22.  However, whether plaintiff had mild or moderate CTS is not what is at issue in the RFC determination; the issue is what impact her CTS had on her functional capacity.  The report plaintiff cites does not include any indication of her condition's impact on her capabilities.  *See* R. at 417.  Accordingly, the Court finds no error in the ALJ's failure to cite this one report. See *Wilson v. Astrue*, 602 F.3d 1136, 1148 (10th Cir. 2010) (upholding ALJ decision that did not state an opinion on two reports by plaintiff's caregivers because "[t]here is nothing to show that the ALJ failed to properly consider these records," and neither record reached or supported a conclusion of disability).

---

claimant, specialization, and other factors.  *Id*. § 416.920c(c).  The ALJ used the proper framework and plaintiff's cite to the old standard is misplaced.

### b. Headaches

Plaintiff's final argument is that the ALJ improperly found her headaches not to be severe.  Docket No. 16 at 22-24.  The ALJ cited evidence that her headaches appeared to be improving with medication and that there were no objective findings to support plaintiff's allegations of headaches.  R. at 18.  Plaintiff argues that these opinions are internally inconsistent.  Docket No. 16 at 23.  The Court disagrees.  It is consistent for the ALJ to find that treatment notes showed improvement with medication while imaging of plaintiff's head (i.e., objective findings) was normal.  Dr. Pratt cited plaintiff's migraines in his (1) limitations on her ability to lift and stand, and (2) recommendation to avoid ladders and unprotected heights.  R. at 92-93.  The ALJ's RFC stated that plaintiff cannot be exposed to hazardous work areas.  R. at 21.  Plaintiff makes no argument that her headaches themselves qualify her as disabled.  *See* Docket No. 16 at 22-24.  "The ALJ's RFC determination must be supported by some medical evidence of the claimant's ability to function in the workplace, but RFC is ultimately an administrative determination reserved to the Commissioner."  *Phillips v. Comm'r*, No. 20-cv-00789-MSK, 2021 WL 2910654, at *8 (D. Colo. July 12, 2021) (citing *Chapo*, 682 F.3d at 1288).  Here, the RFC incorporated limitations due to plaintiff's headaches and is supported by substantial evidence.

### E.  Step Five

Plaintiff does not argue an error at step five.  *See generally* Docket No. 16.

## V.  CONCLUSION

Finding that plaintiff has not demonstrated error in the ALJ's decision, the Court

will affirm.  For these reasons, it is

ORDERED that the decision of the Commissioner finding that plaintiff is not

disabled is **AFFIRMED**.


DATED May 5, 2022.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge